OPINION
PER CURIAM.
Shaun Wright, proceeding pro se, appeals an order of the United States District Court for the Middle District of Pennsylvania granting summary judgment in favor of Appellee Scott Altland, a Sprin-gettsbury Township police officer, in his civil rights action. Wright was charged with two robberies in 2005; a bank robbery and the robbery of a Hardee’s restaurant. He was later acquitted of the Har-dee’s robbery, and his complaint alleges false arrest and imprisonment and malicious prosecution in connection with the Hardee’s robbery. Wright also claims that property was seized during the investigation of that robbery in violation of his Fourth Amendment rights.[1] We will affirm the District Court’s order to the extent it granted summary judgment on Wright’s false arrest and imprisonment and malicious prosecution claims, but will vacate as to Wright’s unconstitutional seizure of property claim.
The record reflects that Detective Alt-land was assigned to investigate an armed robbery that occurred on September 15, 2005, at approximately 8:30 p.m. at a Har-dee’s restaurant. On the night of the robbery, Springettsbury Township police officers interviewed Hardee’s employees Rachel Watkins and Christina Osborn, who identified the robber as a black male, 5'8" to 6' tall with a thin build, and wearing a white t-shirt, blue jeans with red stitching around the pockets, and a black knit cap pulled down over his face. Watkins and Osborn stated that the male entered the store carrying a black revolver and demanded all of their money. Watkins gave the robber $300.00 from her cash register and the robber fled.
On September 20, 2005, Detective Alt-land heard a radio dispatch reporting an armed robbery at a bank in Hellam Township, the neighboring municipality. Detective Altland and another detective went to the bank. Like the robber of Hardee’s, the bank robber reportedly wore a white t-shirt and a black knit cap pulled down over his face and carried a black revolver. Later that day, Hellam Township police advised Detective Altland that the car used by the bank robber to flee the scene was registered to Jora Rial, who lived in the Yorkshire Apartments in Springettsbury Township.
Detective Altland went to the Yorkshire Apartments and interviewed Rial, who lived with Wright. Rial told Detective Alt-land that she and Wright went to the York Fair on September 15, 2005. Rial explained that she was with Wright until 6:30 or 7:00 p.m., when he left the apartment *375 because he had something to do. Rial stated that Wright returned at 8:45 p.m. and they went to the fair. Rial told Detective Altland that Wright had a lot of money, that she asked Wright where he got the money because Wright was unemployed, and that Wright did not respond. Detective Altland obtained three money orders from Rial in the Yorkshire Apartments rental office in the amounts of $1000.00, $500.00, and $15.00. He gave the money orders to the Hellam Township police. Detective Altland later learned that Wright had bought the money orders on September 20, 2005, after the bank robbery occurred.
Wright was arrested for the bank robbery. York County Detective Ray Taylor interviewed Wright after his arrest about the Hardee’s robbery. Taylor reported that Wright told him that he had met “P” at Hardee’s and that “P” had asked him to check how many people were inside the restaurant. Wright went inside and asked for a cup of water and then told “P” what he saw. Wright then asked “P” why he wanted to know the number of people inside. “P” replied, “I’m about to get 'em.” Altland Certification at 3. Wright stated that he understood that “P” was about to rob Hardee’s, that he left the area, and that he had no more contact with “P.” According to Taylor, Wright told police, “I’ll take a conspiracy on this case, but I didn’t do the robbery.” Altland Certification at 3.
Detective Altland spoke again to Har-dee’s employee Christina Osborn, asking her if she remembered a black male ordering a cup of water before the robbery. Osborn stated that she did, and that when the same black male returned to rob the store, she thought it was a joke. Osborn also stated that the robber had the same jeans and mouth features as the person who ordered the cup of water. Thereafter, Detective Altland filed a criminal complaint against Wright and an affidavit of probable cause for his arrest for committing the Hardee’s robbery. As noted above, Wright was acquitted of the charges arising from the Hardee’s robbery and he then filed his present complaint.
In granting summary judgment for Detective Altland on Wright’s false arrest and imprisonment and malicious prosecution claims, the District Court recognized that lack of probable cause is an element of these claims and properly considered whether Detective Altland had probable cause to arrest Wright for the robbery. See Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir.2007) (malicious prosecution); Groman v. Township of Manalapan, 47 F.3d 628, 634-36 (3d Cir.1995) (false arrest and imprisonment).[2] As noted by the District Court, the descriptions of the robbers involved in the Hardee’s robbery and the bank robbery, and the robbers’ modus operandi, were similar, and Wright already had been arrested for the bank robbery. In his affidavit of probable cause, Detective Altland set forth Rial’s statements that she was with Wright on the night of the Hardee’s robbery until 6:30 or 7:00, that Wright returned at 8:45 with a lot of money, that she asked Wright where he got the money but he did not respond, and that Wright had not had a job in over a month.
The affidavit also includes Wright’s statements to Detective Taylor that Wright had gone into the Hardee’s on the night of the robbery and asked for a cup of water in order to see how many people were there, and that he would “take a conspiracy” but he did not commit the *376 robbery. The affidavit also recounts Detective Altland’s later conversation with a Hardee’s employee, who stated that a person ordered water on the day of the robbery and that this person was the same person as the robber.
These facts were sufficient to establish probable cause for Wright’s arrest. See Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir.2003) (noting that probable cause to arrest exists when the facts and circumstances within the arresting officer’s knowledge are sufficient to warrant a reasonable person to believe that an offense has been committed by the person to be arrested). Although Wright disputes some of the information relied upon by Detective Altland, we agree with the District Court that Wright has not shown that Detective Altland had reason to doubt the information.
The District Court further concluded that Wright had not shown that Detective Altland knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions in applying for a warrant, and that such statements or omissions were material to the finding of probable cause. See Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir.2000). Although Wright did establish that Detective Altland omitted the fact that Hardee’s employees had stated that the robber resembled a former employee, the District Court noted that, even if this information had been included in the affidavit, there was still probable cause to arrest and prosecute Wright. We agree. The District Court did not err in granting summary judgment for Detective Altland on Wright’s false arrest and imprisonment and malicious prosecution claims.
The District Court also granted summary judgment on Wright’s claim that Detective Altland seized the three money orders in violation of his Fourth Amendment rights, concluding that Wright was collaterally estopped from bringing his claim because his motion for return of property on Fourth Amendment grounds was denied in state court. The District Court found Wright’s contention that the state court judge never heard the motion on the merits unsupported by the record.
Collateral estoppel requires a final adjudication of an issue on the merits. Office of Disciplinary Counsel v. Kiesewetter, 585 Pa. 477, 889 A.2d 47, 50 (2005).[3] Although Altland states in his brief that it is undisputed that there was an adjudication on the merits, Wright contests that there was such an adjudication, arguing that his motion was denied on procedural grounds. Wright states that the court referred the motion to his public defender, who refused to litigate it because it was a civil matter, and that the court told him that he would have to get another lawyer. Wright’s motion for return of property was docketed on the state court’s miscellaneous docket. Detective Altland relies on the docket, which reflects only that Wright’s motion was denied. Because the record does not conclusively establish that there was an adjudication on the merits, Detective Alt-land has not shown that he is entitled to summary judgment on Wright’s Fourth Amendment claim based on collateral es-toppel.[4]
*377 Detective Altland also argues that Wright lacks standing to assert a constitutional violation because he seized the money orders from Rial. The District Court rejected this argument and explained that Wright has a possessory interest in the money orders, which he bought and gave to Rial to pay the rent for them apartment. See Soldal v. Cook County, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (stating that a seizure occurs for Fourth Amendment purposes when there is some meaningful interference with an individual’s possessory interests in that property). We agree that Wright has standing to bring a Fourth Amendment claim. He alleges an injury in fact and asserts his own legal right and interest. Rakas v. Illinois, 439 U.S. 128, 139, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).[5]
In the ordinary case, seizure of personal property is per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause. United States v. Place, 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Detective Altland asserts that Rial consented to the seizure and that stolen money funded the money orders. The District Court should address in the first instance whether Detective Altland has established that an exception to the warrant requirement applies.[6] We will thus remand this matter to the District Court.
Accordingly, we will affirm in part and vacate in part the District Court’s order.

. Wright also brought claims against the Springettsbury Township Police and York County, and claims against Detective Altland for due process violations, negligence per se, and intentional infliction of emotional distress. The District Court dismissed these claims pursuant to 28 U.S.C. § 1915(e)(2) and Wright does not pursue them on appeal.

. Wright was charged with violating 18 Pa. Cons.Stat. § 3701(a)(l)(v), which provides that a person is guilty of robbery if, in the course of committing a theft, he physically takes or removes property from the person of another by force however slight.

. We look to the law of Pennsylvania, the adjudicating state, to determine its preclusive effect. See Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir.2002).

. Detective Altland might be able to establish on remand that there was an adjudication on the merits in state court with the submission of additional evidence. We also note that Detective Altland has not asserted, and it is unclear from this record, whether Wright’s Fourth Amendment claim was adjudicated in his criminal proceedings for the bank robbery.

. In Rakas, the Supreme Court also explained that the definition of Fourth Amendment rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing. Id. at 140.

. The District Court, of course, need not reach this question if Detective Altland establishes that Wright's claim was adjudicated on the merits in state court.